CASE 45—EQUITY—SEPTEMBER 29.

# McKeldin v. McKeldin.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. ACTION TO CANCEL ASSIGNMENT OF INSURANCE POLICY—FRAUD—
   IGNORANCE OF FACTS.—In this action to cancel an assignment
   of an insurance policy executed by the appellant, in whose
   favor the policy upon the life of her son had been issued, to
   the son's wife upon the ground of fraud and undue influence,
   it is not necessary that the asserted fraudulent misrepresenta-
   tions of fact should have been known to the assignee to have
   been false, if she had the means and ability to ascertain
   the truth, and it was her duty to tell it.
2. PAYMENT OF PREMIUM BY WIFE OF LUNATIC—AGENT.—When a
   legal and moral obligation rested on an insured to keep a policy
   of insurance alive, payments of premium by his wife out of his
   money, he having been adjudged a lunatic, will be treated as
   having been made by her as his agent.
3. ASSIGNMENT CANCELLED FOR IGNORANCE OF MATERIAL FACTS.—
   Where the beneficiary of an insurance policy had encumbered
   her real estate in the faith of the insurance policy's standing as
   an indemnity, it would be inequitable to permit an assignment
   of the policy to stand without a complete knowledge of the
   material facts by the assignor.
4. MISREPRESENTATION OF EFFECT OF COVENANTS OF POLICY.—A rep-
   resentation by the assignee of such policy that the policy would
   become void if the premium should not be paid at maturity
   when the policy contained the clause obligating the insurance
   company to issue paid-up policy in proportion to premiums paid,
   was a material misrepresentation.

PRYOR, O'NEAL & PRYOR, AND LANE & BURNETT FOR APPEL-
LANT.

1. The payment of each annual premium on a policy of insurance
   is in a qualified sense a new contract. Thompson v. Cundiff; 11
   Bush, 567; Robinson v. Duvall, 79 Ky., 83; and when the insur-
   ance is payable on the death of the insured to another named as

beneficiary, such insurance can not be treated as a part of the estate of the person whose life is insured nor subject to his debts or power of disposition, but remains the property and estate of and is to be paid to the beneficiary named in the policy. Cole v. Marple, 98 Ill., 58; Mutual Life v. Stibbe, 46 Md., 302; Catholic v. Priest, 46 Mich., 249; Burton v. Farenholt, 86 N. C., 260; Kimball v. Gillman, 60 N. H., 54; National v. Haley, 78 Me., 268; Brockway v. Connecticut, 29 Fed. Rep., 766; Trabant v. Connecticut, 113 Mass., 167; and it is equally well settled that the person whose life is insured can not assign the policy; Gosling v. Caldwell, 1 Lea., 544; Scoby v. Waters, 10 Lea., 551; Robinson v. Duvall, 79 Ky., 83; Harley v. Heist, 86 Ind., 196; Ferdin v. Canfield, 104 N. Y., 143; Donney v. Hoffer, 110 Penn. St., 109. And it is equally well settled that the voluntary payment of premiums vests no interest in the person making the payments in the policy of insurance or the money to be realized on it. Vol. 13, p. 654, Am. & Eng. Enc. of Law.

2. When a relation of trust and confidence exists, the party in whom it is reposed and who has obtained a benefit, should show an undoubted right to it. The onus is upon him to make it appear that the transaction was fair and proper. Harper v. Harper, 85 Ky., 160; Highberger v. Stiffler, 21 Md., 352; Hunter v. Owens, 10 Ky. Law Rep., 651; McHarry v. Irwin, 85 Ky., 322 (9 Ky. Law Rep., 250); Davis v. Chaney, 5 Ky. Law Rep., 688; Kerr on Fraud and Mistake, 143; Huguenin v. Basely, 14 Vesey, 273; Leading Cases in Equity, vol. 2, p. 556.

3. Where parties who are not upon an equal footing, by reason of extreme age, mental weakness, natural infirmity or helplessness of the one, deal with one another, an unfair, or undue advantage obtained in the dealing by the stronger over the weaker will be set aside by a court of chancery on the application of the party defrauded. Kerr on Fraud and Mistake, 183; Huban v. Huban, 3 Ky. Law Rep., 56; Boarman v. Gardner, 7 Ky. Law Rep., 521; Davis v. Chaney, 5 Ky. Law Rep., 688; Moyers v. Evans, 11 Ky. Law Rep., 733; Bagby v. Bagby, 10 Ky. Law Rep., 540, 541; Driver v. Hunt, 2 Ky. Law Rep., 435.

PHELPS & THUM AND MIX BROTHERS FOR APPELLEE.

The facts of this case do not show fraud or undue influence.

W. W. THUM, ZACH PHELPS AND MIX BROTHERS FOR APPELLEE IN A PETITION FOR A REHEARING.

McKeldin v. McKeldin.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

April 7, 1890, the Mutual Life Insurance Company of New York issued a policy on the life of Charles E. McKeldin for $2,000, in favor of his mother, Frances B. McKeldin, upon which was payable a quarterly premium of $15.18 on the 7th of July, October, January and April of each year. In July, 1891, he married appellee, Ella McKeldin, but continued to pay the premiums up to October, 1895. In December, 1895, he was found a lunatic, and sent to the asylum at Anchorage, and died there in the evening of January 4, 1896. In the forenoon of that day Frances B. McKeldin, in writing, assigned the policy to appellee, Ella McKeldin, for the nominal consideration of one dollar. On January 9, 1896, Frances B. McKeldin, called in the petition Florence B. McKeldin, brought this action to set aside the assignment, on the ground that it was procured from her by coercion and misrepresentation of Ella McKeldin, called in the petition Ella L. McKeldin. The Mutual Life Insurance Company of New York was also made a party defendant, but makes no defense, having paid $2,000, the amount of the policy, into and subject to the order of the court.

The evidence satisfactorily shows that Charles E. McKeldin was indebted to his father, Sinclair McKeldin, who died in January, 1891, about the sum of $1,000, and that $500 of that indebtedness was remitted by the father before his death in consideration of or because Charles had obtained the policy of insurance. The evidence further shows that the estate of Sinclair McKeldin, of which Charles was administrator, amounted to about $2,000, which by agreement of all the children, including Charles, was turned over to the mother, Frances B. McKeldin. With the proceeds thereof a lot of land in the city of

Louisville was purchased, and a dwelling house erected
thereon, the title being conveyed to her.' In that house
Charles and wife and his wife's sister continued to re-
side with his mother and one of her daughters, who was
an invalid, until his death. In February, 1892, Charles
McKeldin borrowed $300, and induced his mother to ex-
ecute a mortgage on the lot to secure the payment of it.
That debt was, however, paid off. But in February, 1893,
he borrowed the additional sum of $1,500, and induced his
mother to execute a mortgage on the lot to secure the
payment of that sum. The latter encumbrance existed,
and the debt, or at least $1,350 of it, remained unpaid at
the death of Charles. There is some conflict between the
testimony of appellant and appellee as to what took place
between them, and representations made by the latter
at the time the policy was assigned. But we think there
is no room for doubt that Frances B. McKeldin was in-
duced to believe, by the representations of Ella McKeldin,
that the quarterly premium fell due on January 7, 1896,
and unless paid by 12 o'clock on that day the entire policy
would be forfeited. It also appears that Frances B. Mc-
Keldin was unable to raise the money to pay that pre-
mium, being destitute of means, and Ella, aware of that
fact, induced her to make the assignment in considera-
tion that she paid the premium. It further satisfactorily
appears that while Frances B. McKeldin on that occa-
sion believed, and was induced to believe, that her son
Charles would be soon restored to health, and upon his
return do her full justice and protect her, while Ella McKel-
din, who had recently visited her husband at the asylum, be-
lieved from her knowledge of his condition and informa-
tion given her by physicians, that his condition was critical
and his early death probable. There is also evidence

tending strongly to show that Frances B. McKeldin was on that occasion induced by Ella McKeldin to believe that the money arising from the policy, in the event of Charles' death, would be applied to the payment of the mortgage debt and the release of the encumbrance upon her home. The policy of insurance remained in the possession of Charles McKeldin until he was sent to the asylum, and at the date of assignment was in the possession and under the control of Ella McKeldin. The evidence tends to show that Ella McKeldin, who was a woman of intelligence, shrewdness and business capacity, with her father, preconcerted and prearranged the transaction, procuring from the insurance office beforehand the necessary blanks, and selecting the office of a justice of the peace where Frances B. McKeldin was to be taken and the assignment made. The policy of insurance showed on its face that, after the payment of three full annual premiums, the beneficiary was entitled to paid-up insurance, which, by calculation or information at the local insurance office, might have been, if it was not, by appellee ascertained to amount to at least $500. When, therefore, appellee represented to appellant that, unless the quarterly premium due on January 7, 1896, was paid, the policy would be forfeited, and the entire insurance lost, which we are satisfied from the evidence she did do, a false representation was made, whereby appellant was deceived and induced to do what she would not otherwise have done. And it does not make any difference whether she made the representation knowing it to be false or not, for she had the means and ability to ascertain the truth, and it was her duty to tell it; while appellant had never seen the policy, was not able to read, and unfitted, according to the evidence, to transact any

business, and on that account did accept and rely on the representation as true.

By reason of the remission of the $500 by his father, Charles E. McKeldin was under a legal and moral obligation to keep that policy alive by the payment of. the premiums as long as he lived; and as appellee confesses that the money, with which she paid the premium on January 4, 1896, before it was even due, was his money, taken out of his pocket, and did not belong to her, the payment must be treated as having been made by her as his agent, and in discharge of an existing obligation resting upon him. Moreover, as appellant consented to encumber her house and lot with a mortgage, upon the distinct understanding and promise of Charles that, in case he failed to pay the debt while alive, the policy would stand good for it, it would be inequitable to permit appellee to appropriate the insurance money by reason of a transaction on account of which she had paid no money, and brought about, if not by actual fraud and coercion, was procured by concealment of the actual condition of her husband at the time and by a representation that was untrue, and that it was her duty to ascertain and know was untrue. By the transaction appellee has, in an improper manner, acquired the property of appellant, which she can not conscientiously keep, and a court of equity ought not permit her to hold. Wherefore the judgment in this case is reversed, and cause remanded, with directions to the chancellor to cancel and set aside the assignment of the policy made January 14, 1896, by appellant to appellee, and to adjudge the payment to appellant of the amount of insurance money now in custody of the court.